# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PANAMA CITY DIVISION

SHORES OF PANAMA CLUB, LLC; et. al.

      Plaintiffs,                        Case No.:  5:16-cv-00173-RH-GRJ

vs.

SHORES OF PANAMA COLLATERAL, LLC,

      Defendant.

_____/

## ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM

Defendant, Shores of Panama Collateral, LLC ("Shores Collateral"), by and through its undersigned counsel, answers the Second Amended Complaint (the "Complaint") for Damages (Doc. 13), and states as follows:

## ANSWER

Shores Collateral responds to the numbered allegations of the Complaint as follows:

1.    Admitted that this Court has subject-matter jurisdiction and personal jurisdiction over the parties, but without knowledge as to any remaining allegation of this paragraph.

2.    Shores Collateral is without knowledge as to the allegations of Paragraph 2 of the Complaint, and therefore denies same.

3.     Shores Collateral admits the allegations contained in Paragraph 3 of the Complaint.

4.     Shores Collateral admits the allegations contained in Paragraph 4 of the Complaint.

5.     Shores Collateral denies the allegations contained in Paragraph 5 of the Complaint.

6.     Shores Collateral admits the allegations contained in Paragraph 6 of the Complaint.

7.     Shores Collateral is without knowledge as to the allegations of Paragraph 7 of the Complaint, and therefore denies same.

8.     Shores Collateral admits the allegations contained in Paragraph 8 of the Complaint.

9.     Shores Collateral admits the allegations contained in Paragraph 9 of the Complaint.

10.     Admitted that Shores of Panama, Inc., developer of Shores of Panama I Condominium and Shores of Panama II Condominium, filed for bankruptcy in 2008, after selling approximately ½ of the condominium units; and admitted that Silverton Bank, N.A. was the lender to the developer, and that Shores Collateral was in 2009 a wholly owned subsidiary of Silverton Bank, N.A., but otherwise denied.

2

11.     Admitted that Shores Collateral marketed certain assets for sale, but denied that the so-called Offering Memorandum described in Paragraph 11 of the Complaint constituted any type of representation or warranty regarding the assets available for sale, but otherwise denied.

12.     Admitted that Plaintiff, Shores of Panama Holdings, LLC, and Shores Collateral entered into a Purchase and Sale Agreement on or about February 15, 2002; and admitted that Shores of Panama Holdings, LLC and Shores Collateral entered into Addendum A to that Agreement, but otherwise denied.  With respect to the legal conclusions alleged in Paragraph 12, Shores Collateral is without knowledge and therefore denies same.

13.     Admitted that Shores of Panama Holdings, LLC designated the other Plaintiff entities to take title to a portion of the real and personal property to be conveyed under the Sale Agreement, and admitted that Shores of Panama Holdings, LLC elected to take title as a bulk buyer under Florida law instead of as a successor developer with a full assignment of developer rights, but otherwise denied.

14.     Admitted that Shores of Panama Holdings, LLC and Shores Collateral entered into Addendum B on or about April 2, 2012, but otherwise denied.

15.     Shores Collateral denies the allegations contained in Paragraph 15 of the Complaint.

16.    Admitted that on April 23, 2012, Erin Stuckey, an attorney for Shores Collateral, emailed various closing documents, including proposed deeds, to counsel for Plaintiffs, but otherwise denied.

17.    Shores Collateral denies the allegations contained in Paragraph 17 of the Complaint.

18.    Shores Collateral denies the allegations contained in Paragraph 18 of the Complaint.

19.    Admitted that on April 26, 2012, Addendum C was entered into between the parties, but otherwise denied.

20.    Admitted that on April 26, 2012, Erin Stuckey, an attorney for Shores Collateral, emailed various proposed deeds to counsel for Plaintiffs, but otherwise denied.

21.    Admitted that the Plaintiffs received various assignments of agreements related to the real property and that some closing amounts were prorated, but otherwise denied.

22.    Admitted that the transaction closed on April 27, 2012, but otherwise denied.

23.    Shores Collateral denies the allegations contained in Paragraph 23 of the Complaint.

24.    Shores Collateral denies the allegations contained in Paragraph 24 of the Complaint.

25.    Admitted that the storage lockers were assets of Shores Collateral from which it was collecting revenue, but otherwise denied.

26.    Admitted that the Debt was owed by the Association to Shores Collateral because Shores Collateral operated the club for which the Association collected fees on Shores Collateral's behalf, but otherwise denied.

27.    Shores Collateral denies the allegations contained in Paragraph 27 of the Complaint.

28.    Shores Collateral denies the allegations contained in Paragraph 28 of the Complaint.

29.    Shores Collateral denies the allegations contained in Paragraph 29 of the Complaint.

30.    Shores Collateral denies the allegations contained in Paragraph 30 of the Complaint.

31.    Shores Collateral denies the allegations contained in Paragraph 31 of the Complaint.

32.    Shores Collateral is without knowledge as to the allegations of Paragraph 32 of the Complaint, and therefore denies same.

33.    Shores   Collateral   incorporates   by   reference   its   responses   to Paragraphs 1 through 32 of the Complaint as if fully set forth herein.

34.    Shores Collateral admits the allegations contained in Paragraph 34 of the Complaint.

35.    Shores Collateral denies the allegations contained in Paragraph 35 of the Complaint.

36.    Shores Collateral denies the allegations contained in Paragraph 36 of the Complaint.

37.    Shores Collateral denies the allegations contained in Paragraph 37 of the Complaint.

38.    Shores   Collateral   incorporates   by   reference   its   responses   to Paragraphs 1 through 32 of the Complaint as if fully set forth herein.

39.    Shores Collateral denies the allegations contained in Paragraph 39 of the Complaint.

40.    Shores Collateral denies the allegations contained in Paragraph 40 of the Complaint.

41.    Shores Collateral denies the allegations contained in Paragraph 41 of the Complaint.

42.    Shores Collateral denies the allegations contained in Paragraph 42 of the Complaint.

43.     Shores Collateral incorporates by reference its responses to Paragraphs 1 through 32 of the Complaint as if fully set forth herein.

44.     Shores Collateral denies the allegations contained in Paragraph 44 of the Complaint.

45.     Shores Collateral denies the allegations contained in Paragraph 45 of the Complaint.

46.     Shores Collateral denies the allegations contained in Paragraph 46 of the Complaint.

47.     Shores Collateral denies the allegations contained in Paragraph 47 of the Complaint.

48.     Shores Collateral incorporates by reference its responses to Paragraphs 1 through 32 of the Complaint as if fully set forth herein.

49.     Shores Collateral denies the allegations contained in Paragraph 49 of the Complaint.

50.     Shores Collateral denies the allegations contained in Paragraph 50 of the Complaint.

51.     Shores Collateral denies the allegations contained in Paragraph 51 of the Complaint.

52.     Shores Collateral denies the allegations contained in Paragraph 52 of the Complaint.

53.     Shores   Collateral   incorporates   by   reference   its   responses   to Paragraphs 1 through 32 of the Complaint as if fully set forth herein.

54.     Shores Collateral denies the allegations contained in Paragraph 54 of the Complaint.

55.     Shores Collateral denies the allegations contained in Paragraph 55 of the Complaint.

56.     Shores Collateral denies the allegations contained in Paragraph 56 of the Complaint.

57.     Shores Collateral denies the allegations contained in Paragraph 57 of the Complaint.

58.     Shores   Collateral   incorporates   by   reference   its   responses   to Paragraphs 1 through 32 of the Complaint as if fully set forth herein.

59.     Shores Collateral denies the allegations contained in Paragraph 59 of the Complaint.

60.     Shores Collateral denies the allegations contained in Paragraph 60 of the Complaint.

61.     Shores Collateral denies the allegations contained in Paragraph 61 of the Complaint.

62.     Shores   Collateral   incorporates   by   reference   its   responses   to Paragraphs 1 through 32 of the Complaint as if fully set forth herein.

63.     Shores Collateral denies the allegations contained in Paragraph 63 of the Complaint.

64.     Shores Collateral denies the allegations contained in Paragraph 64 of the Complaint.

65.     Shores Collateral denies the allegations contained in Paragraph 65 of the Complaint.

66.     Shores Collateral denies the allegations contained in Paragraph 66 of the Complaint.

67.     Shores Collateral denies the allegations contained in Paragraph 67 of the Complaint.

68.     Any remaining allegations of the Complaint are denied.

## FIRST DEFENSE

As and for an affirmative defense to the Complaint, and all Counts thereof, the allegations of the Complaint fail to state a claim upon which relief can be granted.

## SECOND DEFENSE

As and for an affirmative defense to the Complaint, and Counts II through VII, inclusive, the causes of action, claims, and items of damages asserted therein are barred by the applicable statute of limitations, as they did not accrue within the

time prescribed by law for them before this action was brought, or before they were added into the action in an amended pleading.

## THIRD DEFENSE

As and for an affirmative defense to the Complaint, and Counts II through VII, inclusive, the causes of action, claims, and items of damages asserted therein are barred by the doctrine of laches as Plaintiffs' inexcusable delay in instituting this suit has resulted in prejudice to Shores Collateral.

## FOURTH DEFENSE

As and for an affirmative defense to the Complaint, and all Counts thereof, are barred by operation of the Doctrine of Merger by Deed.

## FIFTH DEFENSE

As and for an affirmative defense to the Complaint, and all Counts thereof, the allegations of the Complaint are barred by operation of the parol-evidence rule.

## SIXTH DEFENSE

As and for an affirmative defense to the Complaint, and all Counts thereof, during the closing on April 27, 2012, Plaintiffs ratified all of the conveyance documents, including without limitation the deeds and bills of sale to be delivered by Shores Collateral to Plaintiffs, or any of them, and affirmatively advised the closing agent, First American Title Insurance Company, to finalize the closing, record the deeds, and disburse the purchase price payment to Shores Collateral,

thereby waiving any claims that Plaintiffs were not receiving what they were supposed to receive in accordance with the terms of the contract between the parties, as amended.

## SEVENTH DEFENSE

As and for an affirmative defense to the Complaint, and all Counts thereof, after the closing of the sale transaction between Shores Collateral and the Plaintiffs, and prior to the Plaintiffs' filing of this action, Shores of Panama Resort Community Association, Inc., an unrelated third party, transferred title to the Beach Parcel via a deed to Plaintiff Shores of Panama Holdings, LLC, which is the current fee title owner to the Beach Parcel.  The intervening third party deed to Plaintiff, Shores of Panama Holdings, LLC, renders the requested relief of reformation of the deed at issue an impossibility.

## EIGHTH DEFENSE

As and for an affirmative defense to the Complaint, and all Counts thereof, any award of damages against Shores Collateral should be reduced by comparative fault of Plaintiffs and Plaintiffs' authorized agents and attorneys as a result of their negligence in regard to negotiating, documenting, and closing Plaintiffs' purchase of the Beach Parcel, storage lockers, and Debt.

11

## NINTH DEFENSE

As and for an affirmative defense to the Complaint, and all Counts thereof, Plaintiffs have failed to join an indispensable party to this action, Shores of Panama Resort Community Association, Inc., in whose absence this Court cannot accord complete relief among the parties to this action.

## TENTH DEFENSE

As and for an affirmative defense to the Complaint, and all Counts thereof, Plaintiffs are collaterally estopped from re-litigating issues previously litigated and adjudicated in the case of *Shores of Panama Resort Community Association, Inc.; et al.., v. Solly Halberthal, et. al.,* case no. 5:14cv294-RH/GRJ, in the United States District Court for the Northern District of Florida, Panama City Division.  Plaintiffs' claims constitute an impermissible collateral attack upon the verdict and judgment rendered in that case, and Plaintiffs are barred from raising claims related to issues previously litigated therein.

## ELEVENTH DEFENSE

As and for an affirmative defense, prior to the institution of this action, Plaintiffs waived all claims, known or unknown, as of April 26, 2012, against Shores Collateral, pursuant to the terms of Addendum C, attached to the Second Amended Complaint as Exhibit "4".

## ATTORNEYS FEES

Shores Collateral has retained the undersigned counsel to represent it in this dispute, and is obligated to pay its attorneys a reasonable fee for their services herein, for which Plaintiffs are liable under the terms of the Contract.

WHEREFORE, having fully answered the Complaint, Shores Collateral prays that it be dismissed, and that the Court award Shores Collateral such relief as may be appropriate.

## COUNTERCLAIM

Defendant, Shores of Panama Collateral, LLC ("Shores Collateral"), by and through its undersigned counsel, sues the Plaintiffs, Shores of Panama Club, LLC, Shores of Panama Holdings, LLC, Shores of Panama Commercial, LLC, Panama Holdings LLC, Panama Partners, LLC and Shores of Panama LLC (the "Plaintiffs"), and the Counterclaim Defendant, Shores of Panama Resort Community Association, Inc., a Florida corporation (the "Association"), and states as follows:

1.      This is an action for declaratory judgment pursuant to 28 U.S.C. §2201, et seq., arising out of the acts and transactions alleged in the Second Amended Complaint (Doc. 13), filed by Plaintiffs herein.

2.      This Court has pendent jurisdiction over these claims, based on its jurisdiction over the main case.

13

3.      Venue is appropriate in this Court as all acts or transactions occurred in Bay County, Florida, within the Panama City Division of this Court.

## BACKGROUND FACTS

4.      Prior to 2007, Shores of Panama, Inc. ("Developer") developed a condominium project commonly referred to as The Shores of Panama, located in Panama City Beach, Bay County, Florida (the "Project").

5.      To finance the construction of the Project, in 2005 Developer borrowed $56,328,000 from Vision Bank, secured by a mortgage against the real and personal property constituting the Project.  In 2007, Developer borrowed an additional $18,349,000 from Vision Bank, secured by a second mortgage against the Project.

6.      By late 2007, the Developer had completed most of the construction on the Project and was in the process of selling individual condominium units to purchasers.  Sales efforts were hampered due to various construction liens and other title impediments, which ultimately resulted in the Developer filing a petition under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code") on February 26, 2008, in the United States Bankruptcy Court for the Northern District of Florida, Case No. 08-50066-LMK (the "Bankruptcy Case").

7.      During the Bankruptcy Case, Vision Bank assigned its interest in the mortgage loans to Silverton Bank, N.A. ("Silverton").

8.     During the course of the Bankruptcy Case, the Debtor was permitted by the Bankruptcy Court to sell individual condominium units to purchasers, and agreed to the entry of a Final Order Authorizing Debtor to Obtain Post-Petition Financing, Use Cash Collateral, Grant Security Interest and Superpriority Administrative Expense Claim, and Provide Adequate Protection (the "Final DIP Order").  As part of the adequate protection provided to Silverton, the Developer was required to close on the sale of at least two units per month, but failed to do so.

9.     In the event of default by the Developer, the Final DIP Order contained sale procedures.  On October 15, 2008, Silverton filed its Certificate of Default under the Final DIP Order, thereby triggering the sale procedures.

10.    Silverton then filed a motion seeking authorization to sell the property of the Developer free and clear of liens and encumbrances, and to approve the assumption or rejection of executory contracts and leases, pursuant to Bankruptcy Code §§105, 363 and  365 (the "Sale Motion") (Bkr. Doc. 484).

11.    Paragraph 18 of the Sale Motion described the property to be sold as including, without limitation:

> (a)  the real property described in the mortgages, which were attached as Exhibit "A" to the Sales Motion, except for any portions of such real property which had previously been expressly released from the mortgage by Silverton;

(b)  all residential units at the Project, on which Silverton's lien had not been expressly released as of the date of the auction to be held;

(c)  all commercial units at the Project, including commercial units being used by the Association, but which were not subject to the Community Property Agreement between the Association and the Developer;

(d)  all  commercial units at the Project being used for rental management activities and the recreation-oriented rooms;

(e)  all storage units at the Project that are separate units; all storage units that are a limited common element;

(f)  the Developer's interest in all community property, including the elevators, cross walks, the commercial registration area and the garage;

(g)  club property, including the outdoor pool and hot tub, indoor pool unit, workout center and related commercial property; and

(h)  all  other  non-condominium  property,  including  without limitation kiosks and tiki huts, non-condominium storage units, the beach area, cooling equipment areas, and miscellaneous vacant land surrounding the exterior of the Project.

12.     Collectively, the Property described in Paragraph 18 of the Sale Motion will be referred to as the "Acquired Developer Property".

13.     On February 2, 2009, the Bankruptcy Court entered its Order scheduling and approving the terms of an auction sale of the Acquired Developer Property and the assumption and assignment or rejection of certain executory contracts and unexpired leases (the "Sale Procedures Order") (Bkr. Doc. 525). paragraph (a) of the Sale Procedures Order set forth in detail the description of the Acquired Developer Property.  Within that definition were the Beach Parcel (as defined in the Second Amended Complaint filed by Plaintiffs in this action), and the Storage Units (as defined in the Second Amended Complaint filed by Plaintiffs in this action).

14.     Pursuant to the Sale Procedures Order, the Debtor conducted an auction sale of the Acquired Developer Property.  Silverton was the highest bidder, with a credit bid of $68,700,000.

15.     Pursuant to the Sale Procedures Order, Silverton filed a Notice of Business Contracts and Leases (Bkr. Doc. 532).  Included on the list of executory contracts and unexpired leases were the Community Property Agreement dated June 27, 2007, between the Developer and the Association (Exhibit A, p. 11), the Club Agreement to lease/manage the pool and spa, among the Club at Shores of Panama, Inc., the Developer and the Association (Exhibit A, p. 12), the Beach

Services Agreement for beach services among Shores Beach Services, LLC, the Developer and the Association (Exhibit A, p. 11) and the Food and Beverage Contract to lease/manage the kiosk and the tiki huts among Shores of Panama Restaurant Holdings, LLC, the Developer and the Association.

16.    On March 6, 2009, the Bankruptcy Court entered its Order Authorizing the Sale of the Acquired Developer Property Free and Clear of All Liens Claims, Interests, Encumbrances and Contract Rights, Authorize the Assumption and Assignment or Rejection of Certain Executory Contracts and Unexpired Leases, all pursuant to Sections 363 and 365 of the Bankruptcy Code (the "Sales Order") (Bkr. Doc. 640).   The Sales Order provides, in paragraph Q thereof, that the Club at Shores of Panama, Inc., Shores of Panama Restaurant Holdings, LLC, and Shores Beach Services, LLC, have consented to the sale, free of their Interest and Claims.  Exhibit C to the Sales Order listed the Executory Contracts or Unexpired Leases which the Developer was authorized to assume and assign to the purchaser at the sale.  Exhibit D to the Sales Order contained a non-exclusive list of interest, claims and executory contracts and unexpired leases which were rejected by the Debtor, including those held by the Club at Shores of Panama, Inc., Shores of Panama Restaurant Holdings, LLC, and Shores Beach Services, LLC.  The Community Property Agreement, listed on Exhibit C was assumed by the Developer and assigned to the Purchaser.

17.     On March 10, 2009, the Developer and Shores of Panama Collateral, LLC, entered into a Subscription and Purchase Agreement, and an Addendum thereto, whereby Shores Collateral agreed to buy and Developer agreed to sell the Acquired Developer Property.

18.     Silverton assigned its rights as the successful bidder at the auction sale to Shores Collateral, a wholly owned subsidiary created by Silverton for the express purpose of taking title to the Acquired Developer Property.

19.     Pursuant to the Sales Order, Shores Collateral consummated its purchase of the Acquired Developer Property, and the Developer executed and delivered a Special Warranty Deed to Shores Collateral conveying the real property to Shores Collateral.  Shores Collateral became the owner of the Acquired Developer Property, and entered into possession of all of the Developer's real and personal property relating to the condominium, pursuant to the Sales Order.

20.     The Club at Shores of Panama, Inc. (the "Old Club") could no longer provide club services to the Project, because its easement rights to enter and occupy the real property constituting the Club Property had been terminated by the Bankruptcy Court, and its contract rights rejected by the Developer in the Bankruptcy Case.  Moreover, the Bankruptcy Court enjoined Old Club from taking any action to interfere with Shores Collateral's ownership of the Club Property, pursuant to Bankruptcy Code § 105.

21.     Shores Collateral, at its sole expense, thereupon undertook for the next several years, to provide all club services at the property pursuant to the terms of the Club Agreements with the implicit understanding that it was stepping into the shoes of Old Club and providing the club services under the Club Agreement (the "Club Services") for the benefit of the Association and the unit owners.  The Association in turn, accepted such Club Services from Shores Collateral, and continued to collect from each unit owner $65 per quarter as part of the quarterly assessments to each unit owner, on behalf of the Club Property. The Project's condominium declaration required club membership and the payment of fees by all unit owners.

22.     The Association experienced financial difficulties during 2009 through 2012.  The Association lacked sufficient funds to pay the amounts due to Shores Collateral for the Club Property's use, despite the Association having collected those funds from the unit owners. Shores Collateral maintained accounting records to track the indebtedness from the Association for the club dues collected but unpaid to Shores Collateral, and these amounts, as they existed from time to time, are defined in the Second Amended Complaint as the "Debt".  At the time that Shores Collateral conveyed its interest to Plaintiffs at closing in April 2012, the Debt was approximately $600,000.

## SALE OF THE ACQUIRED DEVELOPER PROPERTY

23.    By virtue of acquiring the unsold condominium units and the Developer's rights and property, including the Acquired Developer Property, Shores Collateral became a "successor developer" under Florida law and obtained a license as a developer from the State of Florida.  As a successor developer, Shores Collateral was responsible for the entire condominium project and spent in excess of $2,000,000 to repair and improve the condominium project's structures. Shores Collateral hired a property manager to operate the property, oversee the rental of units that Shores Collateral furnished and held out to the public for rental purposes, and otherwise operated the condominium project.

24.    On February 15, 2012, Shores Collateral and Shores of Panama, LLC entered into a real estate purchase and sale contract (the "Agreement"), and Addendum "A" thereto.  The Agreement contemplated that Shores of Panama, LLC would become a successor developer.

25.    During the negotiations and due diligence period following the execution of the Agreement, Shores of Panama, LLC decided to take advantage of a provision of Florida law that allowed it to purchase as a "bulk buyer" and avoid becoming a successor developer, with the attendant successor developer liability. On April 2, 2012, the parties entered into Addendum "B" to the Agreement, Addendum B recognized that the Association had special rights to part of the

Acquired Developer Property, and that Florida law required a developer to turn over to the Association control of the Board of Directors of the Association and property designated as "community property".

26.     On April 26, 2012, Shores Collateral and Shores of Panama Holdings, LLC entered into Addendum "C" to the Agreement.  (The Agreement, as modified by Addendum A, Addendum B and Addendum C is referred to herein as the "Contract").

27.     Pursuant to the Contract, Plaintiffs designated the entities to take title to specific portions of the Acquired Developer Property.  As closing approached, various drafts of deeds were circulated between counsel for the parties to the Contract.   Ultimately, the Plaintiffs approved the deeds to the Plaintiffs as complete and correct, and those were the deeds to be delivered to Plaintiffs at closing.

28.     Counsel for Shores Collateral realized that the Beach Parcel, as defined in the Second Amended Complaint, was not included on any deed to any of the Plaintiffs.  Shores Collateral therefore placed the legal description for the Beach Parcel on the Deed to the Association.

29.     The transaction between Plaintiffs and Shores Collateral closed on April 27, 2012 in a "mail away" closing.  Shores Collateral executed and delivered to the escrow agent, First American Title Insurance Company ("FATIC") all

necessary and required closing documents, including the deeds to be delivered to Plaintiffs and to the Association.  Plaintiffs delivered to FATIC the sale price and the required documentation and certifications.

30.    Prior to disbursing sales proceeds or releasing documents from escrow, FATIC ensured that the Plaintiffs were satisfied with the deeds to Plaintiffs and their respective legal descriptions, and that all requirements for closing had been fulfilled by all parties.  FATIC then disbursed the proceeds of sale to Shores Collateral in accordance with the closing statement, and caused the recordation of the deeds to the Plaintiffs and to the Association.

## POST-SALE DISPUTES

31.    A dispute has arisen between Plaintiffs and Shores Collateral as to the Beach Parcel, the Debt and the Storage Lockers.  The Plaintiffs have demanded that Shores Collateral deed the Beach Parcel to it, and contend that they were entitled to receive the Beach Parcel under the Contract.  Alternatively, Plaintiffs contend that the Beach Parcel was mistakenly deeded by Shores Collateral to the Association.

32.    Shores Collateral, having issued and delivered a Quit Claim Deed to the Beach Parcel to the Association, no longer has any right, title or interest in and to the Beach Parcel and cannot change the Quit Claim Deed to the Association. Although the Association did not pay any consideration to Shores Collateral for the

Quit Claim Deed, Shores Collateral deeded the Beach Parcel to the Association solely because the Beach Parcel was not included on the deeds to one or more of the Plaintiff's, and Shores Collateral did not intend to retain any real or personal property related to the Acquired Developer Property.

33.    Shores Collateral is in doubt as to whether it has any continuing obligations under the Contract, or under the deeds it issued at closing, and an actual, concrete controversy presently exists among Plaintiffs, Shores Collateral, and the Association.

34.    Shores Collateral intended to transfer all club assets relating to the operation of the Club Property, including the Debt as it existed as of the date of the closing, to one or more of the Plaintiffs. Old Club, having been divested of all its interests in the Club Property, could never have had any ownership interest in the Debt, following the acquisition of the Acquired Developer Property by Shores Collateral.

35.    Shores Collateral has at all times maintained that the Debt was created as a consequence of Shores Collateral's provision of all Club Services, at the sole expense of Shores Collateral, to the Association and unit owners at the Project. Shores Collateral was entitled to the quarterly funds being collected by the Association on behalf of the Club Property, which was owned by Shores Collateral.

36.     On information and belief, the Association contends that the Association was not indebted to Shores Collateral at any time, for the use of Club Property despite the Association having collected $65 per quarter from each unit owner, and despite Shores Collateral having provided such Club Services to the unit owners and to the Association from 2009 to 2012.

37.     Based on the numerous lawsuits filed by the Association involving Shores of Panama Condominium, it appears the Association contends that the Beach Parcel was to be Community Property, which is not accurate. Shores Collateral owned the Beach Parcel in fee simple, unencumbered by any interest of the Association, and the Association had no right, title, interest or claim to the Beach Parcel except the Quit Claim Deed to the Association from Shores Collateral.

38.     Shores Collateral also understands that the portion of the real property known as the "Storage Lockers" is claimed by the Association as its sole property, in contravention of the rights assigned to Plaintiffs by Shores Collateral.

## DECLARATORY RELIEF

39.     As set forth above, a controversy exists between Shores Collateral and the Association over the Debt and the Storage Lockers, and among Shores Collateral, the Plaintiffs, and the Association over the Beach Parcel.

40.    Shores Collateral has suffered an injury-in-fact, in that following its sale of the  Acquired Developer Property to the Plaintiffs, it is now being sued by Plaintiffs based on actions taken and litigation against Plaintiffs, and persons aligned with Plaintiffs, and Shores Collateral is being forced to expend funds to defend itself in the instant litigation, and faces the possibility of being brought into any of the numerous cases involving the Association and affiliated persons. There is a substantial likelihood that Shores Collateral will suffer injury in the future.

41.    The Association, although a stranger to the Contract, continues to bring litigation against Plaintiffs and persons aligned with Plaintiffs, challenging the nature, validity and extent of the conveyances by Shores Collateral to one or more of the Plaintiffs, and a decision favorable to Shores Collateral in this Counterclaim is likely to address such injuries by declaring, with finality, the respective rights, duties and obligations of Shores Collateral, the Plaintiffs and the Association with respect to the Beach Parcel, the Debt and the Storage Lockers.

42.    Shores Collateral has retained the undersigned counsel to represent it in this dispute, and is obligated to pay its attorneys a reasonable fee for their services herein, for which Plaintiffs are liable under the terms of the Contract.

WHEREFORE, Shores Collateral requests that the Court enter a Judgment declaring the respective rights, duties and obligations of Shores Collateral, the Plaintiffs and the Association with respect to the Beach Parcel, the Debt and the

Storage Lockers, and grant such other and further relief as may be appropriate.

**SAXON GILMORE &**
**CARRAWAY, P.A.**
201 East Kennedy Boulevard, Suite 600
Tampa, Florida  33602
Phone:  (813) 314-4500
Fax:      (813) 314-4555


By:  */s/ David J. Tong*
       DAVID J. TONG, ESQ.
       dtong@saxongilmore.com
       Florida Bar No. 437085
       Counsel for Shores of Panama
       Collateral, LLC


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Answer, Affirmative Defenses and Counterclaim, together with exhibits thereto, has been served by electronic mail to the following recipients on this 12th day of December, 2016:

Waldman Trigoboff Hilderbrandt Marx & Calnan, P.A.
William E. Calnan, Esq.
wcalnan@waldmanlawfirm.com

The Tarich Law Firm, P.A.
Manny M. Tarich
manny@thetarichlawfirm.com
litigation@thetarichlawfirm.com

                              */s/ David J. Tong*
                              DAVID J. TONG, ESQ.